SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
JILL M. PIETRINI (Cal. Bar No. 138335)
  jpietrini@sheppardmullin.com
PAUL A. BOST (Cal. Bar No. 261531)
  pbost@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067-6017
Telephone:  (310) 228-3700
Facsimile:   (310) 228-3701

Attorneys for Plaintiff
SUMMIT ENTERTAINMENT, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PREFERRED FRAGRANCE, INC., a New York Corporation, FRAGRANCE ACQUISITIONS, LLC, a Delaware limited liability company, EZRIEL POLATSEK, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:13-cv-04310-CAS-AJW<br><br>**FIRST AMENDED COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed:  June 14, 2013 |

Plaintiff Summit Entertainment, LLC ("Summit"), for its first amended complaint against defendants Preferred Fragrance, Inc. ("Preferred"), Fragrance Acquisitions, LLC ("Fragrance Acquisitions"), and Ezriel Polatsek (collectively, "Defendants") and Does 1-10, alleges as follows:

**JURISDICTION**

1.     This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, *et seq.*, and under the statutory and common law of unfair competition.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and

1338(a) and (b), and § 1367, and 15 U.S.C. § 1121.  This action arises under the laws of the United States and Summit and Defendant are of diverse citizenship and the claim exceeds $75,000.  28 U.S.C. § 1332.

2. Venue is proper under 28 U.S.C. §§ 1391(b) and (c) in this case because Summit resides in this District, and on information and belief, Defendants are subject to personal jurisdiction in this District, and/or a substantial part of the events or omissions giving rise to property that is the subject of the action is situated in this District.

## PARTIES

3. Summit is a Delaware limited liability company having its principal place of business in Santa Monica, California.

4. On information and belief, Preferred is a New York corporation, having its principal place of business in Brooklyn, New York, and does business in this District.

5. On information and belief, Fragrance Acquisitions is a Delaware limited liability company, having its principal place(s) of business in New York, New York and/or Newburgh, New York, and does business in this District.

6. On information and belief, Ezriel Polatsek is an individual residing in Brooklyn, New York who does business in this District.

7. Defendants are subject to personal jurisdiction in this District because they do business in the District and have sold and sell the Infringing Goods in this District and Summit was injured in this District.

8. The true names, identities and capacities, whether individual, associate, corporate or otherwise, of Defendants DOES 1 to 10, inclusive, and each of them ("the DOE Defendants"), are unknown to Summit at this time, who therefore sues the DOE Defendants by such fictitious names.  When the true names and capacities or participation of the DOE Defendants are ascertained, Summit will amend this complaint to assert the true names, identities and capacities.  Summit is informed

1  and believes and thereon alleges that each of the DOE Defendants sued herein is
2  responsible for the wrongful acts alleged herein, and is therefore liable to Summit
3  in some manner for the events and happenings alleged in this complaint.  Summit is
4  informed and believes and thereon alleges that at all times herein mentioned, the
5  DOE Defendants were and are doing business and/or residing in this District.

## FACTS

### Summit's Business and Trademarks

8      9.    Since 1991, Summit and its predecessors have been an active
9  participant in the motion picture industry.  Summit has produced and distributed
10 films and related entertainment products, and has also been involved in motion
11 picture financing, production, and distribution services.

12     10.    Summit is the producer and distributor of the highly successful
13 *Twilight* motion picture franchise.  Initially, Summit released the extremely
14 successful and popular *Twilight* about a teenage girl, Isabella ("Bella") Swan, who
15 falls in love with a vampire, Edward Cullen.  Bella's other suitor in the film is
16 Jacob Black, a werewolf.  The film was released in the United States on November
17 21, 2008.  Summit released a second motion picture in the *Twilight* series, *The
18 Twilight Saga:  New Moon* ("*New Moon*"), in the United States on November 20,
19 2009.  Summit released *New Moon* for sale and rental on digital versatile disc
20 ("DVD") on March 20, 2010.  Summit released a third motion picture in the
21 *Twilight* series, *The Twilight Saga:  Eclipse* ("*Eclipse*"), in the United States on
22 June 30, 2010.  Summit released *Eclipse* for sale and rental on DVD on December
23 4, 2010.  Summit released *The Twilight Saga:  Breaking Dawn – Part 1* on
24 November 18, 2011.  Summit released the fifth and final motion picture in the
25 series, entitled *The Twilight Saga*:  *Breaking Dawn – Part 2* on November 16,
26 2012.  The motion pictures constituting *The Twilight Saga* series are herein referred
27 to as the "*Twilight* Motion Pictures."

28     11.    Summit is the owner of the trademark TWILIGHT in block letters, and

in a distinctive stylized font (the "Stylized TWILIGHT mark"), the trademark THE TWILIGHT SAGA, and other marks including the term TWILIGHT (collectively the "TWILIGHT Marks"). Summit owns common law rights and federal registrations of BELLA TWILIGHT in Class 14 (Reg. No. 4,222,783), BELLA TWILIGHT in Class 20 (Reg. No. 4,222,784), LUNA TWILIGHT in Class 3 (Reg. No. 3,929,237), NOX TWILIGHT in Class 3 (Reg. No. 4,173,761), THE TWILIGHT SAGA in Class 4 (Reg. No. 4,079,451), THE TWILIGHT SAGA in Class 5 (Reg. No. 4,016,125), THE TWILIGHT SAGA in Class 9 (Reg. No. 4,177,174), THE TWILIGHT SAGA in Class 14 (Reg. No. 4,151,799), THE TWILIGHT SAGA in Class 16 (Reg. No. 4,177,175), THE TWILIGHT SAGA in Class 16 (Reg. No. 4,321,492), THE TWILIGHT SAGA in Class 18 (Reg. No. 4,324,927), THE TWILIGHT SAGA in Class 20 (Reg. No. 4,151,800), THE TWILIGHT SAGA in Class 20 (Reg. No. 4,321,493), THE TWILIGHT SAGA in Class 21 (Reg. No. 4,165,921), THE TWILIGHT SAGA in Class 21 (Reg. No. 4,335,388), THE TWILIGHT SAGA in Class 24 (Reg. No. 4,151,801), THE TWILIGHT SAGA in Class 24 (Reg. No. 4,321,494), THE TWILIGHT SAGA in Class 25 (Reg. No. 4,147,960), THE TWILIGHT SAGA in Class 26 (Reg. No. 4,339,211), THE TWILIGHT SAGA in Class 30 (Reg. No. 4,016,126), THE TWILIGHT SAGA in Class 41 (Reg. No. 4,175,800), THE TWILIGHT SAGA in Class 45 (Reg. No. 4,012,682), TWILIGHT in Class 4 (Reg. No. 4,175,905), TWILIGHT in Class 5 (Reg. No. 3,861,517), TWILIGHT in Class 9 (Reg. No. 3,884,386), TWILIGHT in Class 16 (Reg. No. 4,067,513), TWILIGHT in Class 18 (Reg. No. 3,884,385), TWILIGHT in Class 21 (Reg. No. 4,063,716), TWILIGHT in Class 25 (Reg. No. 3,944,718), TWILIGHT in Class 26 (Reg. No. 3,867,985), TWILIGHT in Class 28 (Reg. No. 4,096,676), TWILIGHT in Classes 20 & 24 (Reg. No. 4,109,098), TWILIGHT in Classes 9 & 41 (Reg. No. 4,084,243), TWILIGHT in Classes 41 & 45 (Reg. No. 3,756,560), TWILIGHT (Stylized) in Class 5 (Reg. No. 4,239,625), TWILIGHT (Stylized) in Class 9 (Reg. No.

1   4,175,456), TWILIGHT (Stylized) in Class 9 (Reg. No. 4,268,558), TWILIGHT
2   (Stylized) in Class 11 (Reg. No. 4,175,208), TWILIGHT (Stylized) in Class 20
3   (Reg. No. 4,218,172), TWILIGHT (Stylized) in Class 21 (Reg. No. 4,094,221),
4   TWILIGHT (Stylized) in Class 22 (Reg. No. 4,135,884), TWILIGHT (Stylized) in
5   Class 24 (Reg. No. 4,103,469), TWILIGHT (Stylized) in Class 25 (Reg. No.
6   4,091,590), TWILIGHT (Stylized) in Class 30 (Reg. No. 4,350,445), TWILIGHT
7   (Stylized) in Class 41 (Reg. No. 4,103,470), TWILIGHT (Stylized) in Class 45
8   (Reg. No. 3,817,079), TWILIGHT TRACKER in Class 9 (Reg. No. 3,793,131),
9   THE TWILIGHT SAGA in Class 28 (Reg. No. 4,369,020), TWILIGHT in Class 18
10  (Reg. No. 4,368,828), TWILIGHT (Stylized) in Class 21 (Reg. No. 4,368,830),
11  TWILIGHT BRIDAL in Class 21 (Reg. No. 4,369,085), TWILIGHT BRIDAL in
12  Class 24 (Reg. No. 4,369,086), TWILIGHT (Stylized) in Class 26 (Reg. No.
13  4,372,794), and BELLA TWILIGHT in Class 24 (Reg. No. 4,384,462). True and
14  correct copies of these certificates of registration are attached hereto as **Exhibit A**.
15  Summit also has many additional pending federal trademark applications to register
16  the TWILIGHT Marks for use on various types of goods and services, copies of
17  which are attached hereto as **Exhibit B**. Summit's Stylized TWILIGHT mark is
18  shown below:

    [twilight logo]

21      12.    Summit is the owner of the trademark NEW MOON for various goods
22  and services. Summit owns all common law rights associated with the trademark
23  NEW MOON and the following registrations of NEW MOON: Reg. No. 4,091,452
24  (Class 3); Reg. No. 4,072,373 (Class 4); Reg. No. 4,072,374 (Class 5); Reg. No.
25  4,129,107 (Class 9); Reg. No. 4,109,278 (Class 14); Reg. No. 4,183,688 (Class 16);
26  Reg. No. 4,365,004 (Class 16); Reg. No. 4,094,140 (Class 18); Reg. No. 4,139,476
27  (Class 20); Reg. No. 4,191,020 (Class 21); Reg. No. 4,112,369 (Class 21); Reg. No.
28  4,198,859 (Class 22); Reg. No. 4,099,476 (Class 24); Reg. No. 4,129,108 (Class

25); Reg. No. 4,091,453 (Class 26); Reg. No. 4,129,109 (Class 28); Reg. No. 4,091,454 (Class 30); Reg. No. 4,091,455 (Class 41); and Reg. No. 3,785,792 (Class 45) (collectively the "NEW MOON Marks").  True and correct copies of the certificates of registrations of the NEW MOON Marks are attached hereto as **Exhibit C**.

13.  Summit has licensed the TWILIGHT Marks and the NEW MOON Marks to third parties to sell various items of merchandise, including fragrance, clothing, carrying bags, cosmetics and other products and services.  Summit's licensees are currently selling a variety of TWILIGHT and NEW MOON merchandise and offering services under the TWILIGHT Marks and NEW MOON Marks throughout the United States.

14.  By virtue of the popularity of the *Twilight* Motion Pictures, the significant sales of licensed merchandise, and the significant publicity relating to the *Twilight* Motion Pictures, among other things, Summit's TWILIGHT Marks and NEW MOON Marks have become famous.

15.  Summit uses distinctive packaging for its DVDs and licensed merchandise associated with the *Twilight* Motion Pictures.

16.  Summit's TWILIGHT Marks, NEW MOON Marks, and packaging associated with the *Twilight* Motion Pictures and merchandise related thereto are collectively referred to as the "Twilight Intellectual Property."

**Defendants and Their Infringing Actions**

17.   On information and belief, it has come to Summit's attention that Preferred manufactured and offer Moonlight Women's Eau De Parfum and Eau De Parfum Spray, Moonlight Ever After Eau De Parfum, and Moonlight Men's Eau De Toilette Spray and gift sets of fragrance and lotions using the mark MOONLIGHT in the same distinctive font and lower-case letters used and owned by Summit and in packaging that evokes and/or draws an association or connection with the *Twilight* Motion Pictures (the "Infringing Goods").  Images showing many of the

1  Infringing Goods are attached hereto as **Exhibit E**.  Below is a comparison of the
2  MOONLIGHT and TWILIGHT stylized marks:



8  18.  On information and belief, Ezriel Polatsek was or is Preferred's
9  president and directed the aforementioned actions of Preferred.  On information and
10  belief, on or around late 2011, Preferred sold the assets relevant to the Infringing
11  Goods to Fragrance Acquisitions, and Fragrance Acquisitions took over production
12  and sale of the Infringing Goods, which continues to the present date.  On
13  information and belief, as part of the asset purchase agreement, Fragrance
14  Acquisitions entered an employment agreement with Mr. Polatsek whereby Mr.
15  Polatsek was employed by Fragrance Acquisitions as its President and Chief
16  Operating Officer, and continued to direct the activities relating to the Infringing
17  Goods.

18  19.  Defendants' use of MOONLIGHT for their line of personal fragrances,
19  particularly in the same distinctive stylized font and lower-case letters as that used
20  in the *Twilight* Motion Pictures and on almost all officially licensed Twilight
21  merchandise, and Defendants' packaging that is evocative of the *Twilight* Motion
22  Pictures is likely to cause consumers to believe that Summit has approved, licensed,
23  and/or authorized Defendants' use of Summit's Twilight Intellectual Property,
24  when, in fact, Summit has not done so.  Consumers are even more likely to be
25  confused by Defendants' overt use of packaging artwork featuring a moonlit forest,
26  an image which is very similar to and highly reminiscent of that used on
27  promotional materials for the *Twilight* Motion Pictures and officially licensed
28  merchandise.

1  20. As noted above, Summit has entered into licensing agreements with
2  manufacturers, distributors, retailers and service industry providers for the sale of
3  products and the offering of services derived from the *Twilight* Motion Pictures,
4  including personal fragrances. All of Defendants' acts and activities described
5  herein were, and continue to be, without prior authorization, permission, or license
6  from Summit.

7  21. Defendants are also using a bottle that is similar to the shape of the
8  bottle for Summit's IMMORTAL TWILIGHT fragrance and Defendants' various
9  versions of packaging for the MOONLIGHT fragrance appear to track the color
10 palettes for each of the *Twilight* Motion Pictures. Further, Defendants have
11 combined Summit's TWILIGHT and NEW MOON marks to create the infringing
12 and dilutive MOONLIGHT trademark for use on the Infringing Goods. These facts
13 add to the intentional behavior of Defendants.

14 22. On information and belief, after *Twilight* was released and well
15 received by the public, Preferred created and was selling four different versions of
16 its infringing MOONLIGHT fragrance. True and correct copies of pictures of the
17 Infringing Goods are attached hereto as **Exhibit D**.

18 23. Summit alleges on information and belief that Summit and its licensees
19 market their *Twilight* Motion Pictures and the associated TWILIGHT-branded
20 goods and services, respectively, to the same consumers to which Defendants
21 market their Infringing Goods.

22 24. On February 12, 2013, Summit sent Preferred a letter demanding that it
23 cease and desist any and all infringement of Summit's Twilight Intellectual
24 Property. A true and correct copy of Summit's February 12, 2013 demand letter to
25 Preferred is attached hereto as **Exhibit E**.

26 25. On March 18, 2013, Summit sent Preferred a follow-up letter attaching
27 a copy of the cease and desist letter previously sent on February 12, 2013. A true
28 and correct copy of Summit's March 18, 2013, letter to Preferred is attached hereto

as **Exhibit F**.

26. On April 10, 2013, Preferred, through its counsel, responded by email to Summit and denied Summit's claims. Preferred's counsel continued its discussions with Summit and responded to Summit's demands on behalf of Preferred and Fragrance Acquisitions. Fragrance Acquisitions continues to market and sell the Infringing Goods. True and correct copies from Amazon.com showing the current sale of the Infringing Goods are attached hereto as **Exhibit G**.

27. Fragrance Acquisitions has not ceased its unlawful activities, and therefore Defendants continue to infringe and otherwise violate Summit's Twilight Intellectual Property.

**FIRST CAUSE OF ACTION**

**(False Designation of Origin – 15 U.S.C. § 1125(a))**

28. Summit repeats and realleges each and every allegation of paragraphs 1 through 27, above, as though fully set forth herein.

29. Defendants' actions as alleged herein constitute a false designation of origin, affiliation or sponsorship in violation of 15 U.S.C. § 1125(a).

30. Defendants' use of MOONLIGHT in the manner at issue and the sale of the Infringing Goods by Defendants constitute a false designation of origin and a false description or representation that wrongfully and falsely designates the Infringing Goods as originating from Summit, or being associated, affiliated or connected with, or approved or sponsored by Summit or with the *Twilight* Motion Pictures. Defendants' activities are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Summit, or as to the origin, sponsorship, or approval of Defendants' Infringing Goods or Defendants' commercial activities by Summit.

31. As a direct and proximate result of Defendants' wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill. Defendants will continue to use,

1  unless restrained, the MOONLIGHT mark and sell the Infringing Goods, all of
2  which are confusingly similar to Summit's TWILIGHT Marks and the NEW
3  MOON Marks and likely to be associated with the *Twilight* Motion Pictures. Such
4  conduct will cause irreparable damage to Summit. Summit has no adequate remedy
5  at law and is entitled to an injunction restraining Defendants, their officers, agents,
6  and employees, and all persons acting in concert with Defendants, from engaging in
7  further acts of false designation of origin, affiliation, association, or sponsorship.
8      32.   Summit is further entitled to recover from Defendants the actual
9  damages that it sustained and/or is likely to sustain as a result of Defendants'
10 wrongful acts. Summit is presently unable to ascertain the full extent of the
11 monetary damages that it has suffered and/or is likely to sustain by reason of
12 Defendants' acts of false designation of origin, affiliation, association, or
13 sponsorship.
14     33.   Summit is further entitled to recover from Defendants the gains,
15 profits, and advantages that Defendants have obtained as a result of their wrongful
16 acts. Summit is presently unable to ascertain the extent of the gains, profits, and
17 advantages that Defendants have realized by reason of their acts of false
18 designation of origin, affiliation, association, or sponsorship.
19     34.   Because of the willful nature of Defendants' wrongful acts, Summit is
20 entitled to an award of treble damages and increased profits pursuant to 15 U.S.C.
21 § 1117 and destruction of the Infringing Goods under 15 U.S.C. § 1118.
22     35.   Summit is also entitled to recover its attorneys' fees and costs of suit
23 pursuant to 15 U.S.C. § 1117.

### SECOND CAUSE OF ACTION

**(Trademark Infringement – 15 U.S.C. § 1114 and Common Law)**

26     36.   Summit repeats and realleges each and every allegation of paragraphs
27 1 through 35, above, as though fully set forth herein.
28     37.   Defendants have used in commerce, without Summit's permission, the

TWILIGHT Marks and the NEW MOON Marks in a manner that is likely to cause confusion with respect to the source and origin of the Infringing Goods and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, approval, sponsorship, or association of Summit and/or the *Twilight* Motion Pictures with Defendants and the Infringing Goods.

38. Defendants' acts constitute infringement of the TWILIGHT Marks and the NEW MOON Marks in violation of the common law and under 15 U.S.C. § 1114.

39. As a direct and proximate result of Defendants' wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill. Defendants will continue to use, unless restrained, the MOONLIGHT mark or other marks confusingly similar to the TWILIGHT Marks and/or the NEW MOON Marks and will cause irreparable damage to Summit. Summit has no adequate remedy at law and is entitled to an injunction restraining Defendants, their officers, agents, servants, and employees, and all persons acting in concert with Defendants, from engaging in further acts of infringement.

40. Summit is further entitled to recover from Defendants the actual damages that it sustained and/or is likely to sustain as a result of Defendants' wrongful acts.

41. Summit is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of its wrongful acts.

42. Because of the willful nature of Defendants' wrongful acts, Summit is entitled to an award of punitive damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

## (Dilution--15 U.S.C.§ 1125(c); Cal. Bus. & Prof. Code § 14247)

43. Summit repeats and realleges each and every allegation of paragraphs 1 through 42, above, as though fully set forth herein.

44. Summit has used the TWILIGHT Marks and the NEW MOON Marks to identify its products relating to the *Twilight* Motion Pictures before Defendants began promoting and using the Twilight Intellectual Property, or a close approximation thereof, on the Infringing Goods. The TWILIGHT Marks and the NEW MOON Marks are inherently distinctive and have acquired distinction through Summit's extensive, continuous, and exclusive use of the TWILIGHT Marks and the NEW MOON Marks.

45. The TWILIGHT Marks and the NEW MOON Marks are famous and distinctive within the meaning of 15 U.S.C. §§ 1125(c)(1) and 1127 and Cal. Bus. & Prof. Code § 14247.

46. Defendants' use of the MOONLIGHT mark in the stylized font used by Summit and use of its packaging evocative of the *Twilight* Motion Pictures is likely to dilute the distinctive quality of Summit's TWILIGHT Marks and the NEW MOON Marks in violation of 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14247.

47. Defendants' acts complained of herein are likely to damage Summit irreparably. Summit has no adequate remedy at law for such wrongs and injuries. The damage to Summit includes harm to its trademarks, goodwill, and reputation that money cannot compensate. Summit is, therefore, entitled to a preliminary and permanent injunction enjoining Defendants' use of the MOONLIGHT mark, the TWILIGHT Marks, the NEW MOON Marks, or any marks confusingly similar thereto or dilutive thereof in connection with the promotion, advertisement and sale of any products offered by Defendants.

48. Summit is further entitled to recover from Defendants its actual

damages sustained by Summit as a result of Defendants' wrongful acts. Summit is presently unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts of dilution.

49. Summit is further entitled to recover from Defendants the gains, profits, and advantages Defendants have obtained as a result of their wrongful acts. Summit is presently unable to ascertain the extent of the gains, profits and advantages Defendants have realized by reason of Defendants' willful acts of dilution.

50. Because of the willful nature of Defendants' actions, Summit is entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

## FOURTH CAUSE OF ACTION
**(Statutory and Common Law Unfair Competition)**

51. Summit repeats and realleges each and every allegation of paragraphs 1 through 50, above, as though fully set forth herein.

52. By reason of all of the foregoing and that alleged below, Defendants have been, and are, engaged in "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.* of the California Bus. & Prof. Code and acts of unfair competition in violation of the common law.

53. In addition to the other acts alleged herein, Defendants have engaged in unlawful acts by infringing and diluting the TWILIGHT Marks and the NEW MOON Marks and otherwise infringing Summit's Intellectual Property.

54. In addition to the other acts alleged herein, Defendants have engaged in unfair acts by passing off or suggesting their Infringing Goods as being associated, connected, or affiliated with the *Twilight* Motion Pictures and Twilight Intellectual Property, and by using names owned by Summit.

55. In addition to the other acts alleged herein, Defendants have engaged in fraudulent acts by the actions alleged herein because such actions are likely to deceive consumers and other members of the public.

56. Summit invested substantial time or money in the development of the Twilight Intellectual Property, and Defendants used the Twilight Intellectual Property to create, market, advertise, and sell the Infringing Goods. Defendants have appropriated the Twilight Intellectual Property without authorization from Summit.

57. Defendants' acts complained of herein have damaged and will continue to damage Summit irreparably. Summit has no adequate remedy at law for these wrongs and injuries. The damage to Summit includes harm to its Twilight Intellectual Property, goodwill, and reputation in the marketplace that money cannot compensate. Summit is therefore entitled to: (a) injunctive relief restraining and enjoining Defendants and their officers, agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from using the Twilight Intellectual Property or any mark, name, symbol, or logo which is confusingly similar thereto, in connection with the marketing or sale of any goods or services by Defendants; (b) Summit's actual damages sustained as a result of Defendants' wrongful acts; (c) an accounting of Defendants' profits from the Infringing Goods; (d) the award of Defendants' unjust profits, as well as sums sufficient to compensate Summit for all harm suffered as a result of Defendants' conduct; and (e) punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Summit prays that this Court enter judgment against Defendants as follows:

1. Finding that Defendants have violated 15 U.S.C. § 1125(a) and the common law, have infringed the TWILIGHT Marks and the NEW MOON Marks under the common law and infringed the TWILIGHT Marks and the NEW MOON Marks under 15 U.S.C. § 1114, have violated 15 U.S.C. § 1125(c)(1) and Cal. Bus. & Prof. Code § 14247, and have violated Cal. Bus. & Prof. Code § 17200 and the

1  common law by engaging in unlawful, unfair, and/or fraudulent business practices;

2      2.    Ordering that Defendants and, as applicable, their officers, agents, servants, directors, employees, servants, partners, representatives, assigns, successors, related companies, and attorneys and all persons in active concert or participation with Defendants or with any of the foregoing be enjoined preliminarily during the pendency of this action and permanently thereafter from:

    a.    Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling the Infringing Goods or any other goods bearing the MOONLIGHT mark, the TWILIGHT Marks, the NEW MOON Marks, or any other mark, name, symbol, or logo, which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any goods that Defendants caused to enter the stream of commerce or any of Defendants' commercial activities are sponsored or licensed by Summit, are authorized by Summit, or are connected or affiliated in some way with Summit or the *Twilight* Motion Pictures;

    b.    Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling the Infringing Goods or any other goods bearing the TWILIGHT Marks, the NEW MOON Marks, or any other mark, name, symbol, or logo that is a copy or colorable imitation of, incorporates, or is confusingly similar to the TWILIGHT Marks and/or the NEW MOON Marks, including the MOONLIGHT mark, or includes packaging that is confusingly similar to or evocative of the *Twilight* Motion Pictures;

    c.    Implying Summit's approval, affiliation, connection, or sponsorship of Defendants' goods or Defendants' commercial activities or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Summit and from otherwise interfering with or injuring the TWILIGHT Marks, the NEW MOON Marks, or the goodwill associated therewith;

- 13 -

    d. Engaging in any act which is likely to dilute the distinctive quality of the TWILIGHT Marks or the NEW MOON Marks, and/or injures Summit's business reputation;

    e. Representing or implying that Defendants are in any way sponsored by, affiliated with, or licensed by Summit; or

    f. Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (e) above.

 3. Ordering that Summit is the exclusive owner of the TWILIGHT Marks and the NEW MOON Marks and that such marks are valid and protectable;

 4. Ordering that Defendants be required to deliver to Summit for destruction all Infringing Goods, packaging therefor, and/or promotional artwork which bear the MOONLIGHT mark or any other trademarks, names, images logo, or packaging that are confusingly or substantially similar to the TWILIGHT Marks or the NEW MOON Marks or evocative of or draw an association, affiliation, or connection with the *Twilight* Motion Pictures;

 5. Granting an award of damages suffered by Summit according to proof at the time of trial;

 6. Ordering that Defendants account to Summit for any and all profits earned as a result of Defendants' acts of infringement in violation of Summit's rights under the Lanham Act, Cal. Bus. & Prof. Code §§ 14247, 17200, *et seq.*, and the common law;

 7. Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

 8. Granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts;

 9. For pre-judgment interest on any recovery by Summit;

 10. Granting an award of Summit's costs, expenses, and reasonable

1 | attorneys' fees; and

2 |     11.    Granting such other and further relief as is just and proper.

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated: November 18, 2013    By: /s/Jill M. Pietrini
                                        Jill M. Pietrini
                                        Attorneys for Plaintiff SUMMIT ENTERTAINMENT, LLC

## JURY DEMAND

Summit demands a trial by jury of all issues triable by jury.

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated: November 18, 2013

By: /s/Jill M. Pietrini
Jill M. Pietrini
Attorneys for Plaintiff
SUMMIT ENTERTAINMENT, LLC

SMRH:412434856.1